UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| James L. Maughan<br>***Plaintiff***<br><br>-v-<br><br>The United States Department of Justice and William P. Barr<br>***Defendant(s)*** | Case: 1:20-cv-03199   Jury Demand<br>Assigned To : Lamberth, Royce C.<br>Assign. Date : 11/3/2020<br>Description: Employ. Discrim.  (H Deck)<br><br>Jury Demand: Yes |

COMPLAINT

NOW COMES, James L. Maughan a resident and domiciliary of East Baton Rouge Parish, Louisiana who respectfully represents:

**1.**

***Jurisdiction & Venue***

This is a suit under The Rehabilitation Act of 1973; 29 U.S.C.A. § 791 et seq., for damages, legal, and equitable relief under 42 U.S.C. 2000d et seq. Venue is proper under 42 U.S.C.A. §2000e(f)(3) because the unlawful employment practices alleged occurred in the jurisdictional confines of this Court and it is the district were Plaintiff's employment records were maintained and administered.

**2.**

***The Parties***

Plaintiff is a licensed attorney in good standing with the Louisiana State Bar Association that had practiced as a litigation trial attorney for approximately 20 years when he unsuccessfully attempted to obtain employment with the Defendant.

{00027565}

RECEIVED Mail Room
NOV -3 2020
Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

1

**3.**

Made Defendant herein, is William P. Barr, ("Barr") in his official capacity, as the Attorney General and Head of the United States Department of Justice, and Department of Justice an Executive Department of the Federal Government of the United States of America, ("Department"), headquartered at 950 Pennsylvania Ave. NW. Washington DC 20530-0001.

*Factual Background*

**4.**

Plaintiff is a bilateral amputee with neurological deficits in the extremities on the left side of his body because of a postoperative stroke in November 2013, after undergoing surgery for the partial amputation of both legs below the knee. Plaintiff's physical condition limits his ability to ambulate and accomplish tasks requiring the use and dexterity of both hands causing him to be disabled under the Rehabilitation Act of 1973, at 29 U.S.C.A. § 705(20) and 29 C.F.R. § 1630.2(g).

**5.**

Plaintiff's disability is severe under 5 C.F.R. § 213.3102(u) and a "Targeted Disability "placing Plaintiff in a subclass of individuals with disabilities, which have historically faced extreme and persistent discrimination leading to the highest rates of under-representation and under-employment in the private and federal workforce.

**6.**

The Department is an Executive Agency of the United States Government that employs over 1000 employees whose employment practices are subject to the Affirmative Action mandates established by the Rehabilitation Act, Executive Orders, Federal Regulations, Special Employment Programs and numerous initiatives aimed at remedying historical discrimination by requiring the adoption of employment goals for individuals with disabilities, ("IWD"), and sub-goals for individuals with targeted disabilities ("IWTD").

7.

The Defendant has adopted and must maintain an Affirmative Action Program Plan, ("Plan"), incorporating employment practices recommended by The Interagency Committee on Employees who are Individuals with Disabilities, ("Committee"), to increase its recruitment, employment, retention, and advancement of IWD. Defendant is also required to capture statistical data related to its employment practices for self-evaluation and analysis to determine whether it had complied with annual goals established by the Equal Employment Opportunity Commission, ("Commission") to have 12% of its workforce represented by IWD and 2% of its workforce represented by IWTD at each grade and salary level.

8.

The Department is required to act as a Model Employer of individuals with disabilities and required to give individuals with disabilities full consideration for hiring, advancement, and retention in its federal workforce. It is also required to affirmatively act to promote the recruitment, hiring, and advancement of qualified individuals with disabilities, to eliminate their under-representation in the Federal Workforce.

9.

Under 29 U.S.C. § 791 the Department's Plan must: describe the extent and methods used to meet the special needs of employees with disabilities; be reviewed and updated annually for approval by the Commission, after consultation with the Committee and finding it provides sufficient assurances, procedures, and commitments to adequate hiring, placement, and advancement opportunities for individuals with disabilities.

{00027565}

10.

On January 3, 2017, the Commission issued a final rule amending the implementing regulations for Section 501 of the Rehabilitation Act, (Section 501), because stronger regulations were required to increase and enhance the employment of individuals with disabilities. The amended rule also imposed mandatory minimum requirements on Plan criteria for disability hiring and advancement programs.

11.

Under the amended regulations the minimum requirements for Defendant's Plan, *Recruitment* section mandated inclusion of:

a) specific steps the Department had to take to ensure a broad range of individuals with disabilities, and targeted disabilities, would be aware, and encouraged to apply for eligible vacancies;
b) programs and resources used to identify job applicants with disabilities, eligible for appointment under a hiring authority that considers disability; and,
c) maintenance of a database of prior applicants with disabilities, for participation in training and internship programs that lead to direct employment.

12.

The more onerous implementing regulations imposed Plan requirements for the *Application process* section, mandates that the Defendant maintain sufficient staff to handle any disability- related issues arising during the application and selection processes, with sufficient training, support, and other resources required by agency personnel to carry out their responsibilities, including providing prompt and accurate responses to:

a) disability-related questions from members of the public about the agency's application and selection processes;

b) questions about reasonable accommodations needed by job applicants during the application and selection processes; and,

c) questions about how individuals may apply for appointment under hiring authorities that consider disability;

d) Processing requests for reasonable accommodations by job applicants during the application and placement processes;

e) ensuring reasonable accommodations are provided under the standards in part 29 CFR 1630;

f) Accepting applications for appointment under hiring authorities that consider disability;

g) determining applicant eligibility for appointments under a hiring authority that considers disability,

h) forwarding eligible employee applications to the relevant hiring officials with an explanation of how and when the individual may be appointed; and,

i) Overseeing any other agency programs designed to increase hiring of individuals with disabilities.

**13.**

Defendant, Barr, is responsible for development and implementation of the Department's Plan and must ensure: its compliance with new directives and implementing instructions issued by the EEOC; includes effective systems to monitor and evaluate its disability employment programs; provides for the identification and elimination of barriers to employment of individuals with disabilities; and, adequate data collection systems exist to capture employment related applicant flow data, in all component and field installations.

{00027565}

5

**14.**

Paramount to Barr's oversight responsibility, is the necessity for accurate and thorough data collection to allow for internal audit, analysis, assessment of effectiveness, and the efficiency of agency actions as they relate to programs intended to comply with obligations imposed by Section 501, and preparing reports identifying agency accomplishments and deficiencies with sufficient detail to guide future action reasonably designed to numerically increase the employment of individuals with disabilities in the following year.

**15.**

Plaintiff unsuccessfully attempted to obtain employment with the Defendant as a Trial Attorney after the effective date of the stronger implementing regulations for Section 501 for several positions including vacancies with the United States Attorney's Office in New Orleans, Baton Rouge and Shreveport, Louisiana.

**16.**

Plaintiff was frequently notified that he was considered qualified, or among the best qualified applicants for the employment vacancies, but he was not contacted for an interview.

**17.**

In October 2019, Plaintiff also sought employment as a Trial Attorney with the Criminal Division, Fraud Section, the Department of Justice advertised under Announcement Number 19-CRM-FRD-003.

**18.**

Plaintiff was "qualified" "otherwise qualified" or exceeded the qualifications required to carry out the essential job duties and responsibilities of an attorney for vacant positions in Louisiana, and in

{00027565}

Announcement Number 19-CRM-FRD-003, (Trial Attorney, 0905 Attorney Job family (Series) ) under the Position Classification System in use by the Office of Personnel Management , ("OPM").

**19.**

Defendant did not fulfill its obligation to be a Model Employer under 29 CFR §1614.203(c), because Plaintiff was not given full consideration during the recruitment and hiring process. Plaintiff's application was evaluated by an individual(s) that lacked knowledge of the Department's Plan, affirmative action obligations, model employer mandates, as evidenced by his inability to meaningfully respond to questions presented during the investigation of Plaintiff's discrimination complaint conducted by the Commission.

**20.**

Plaintiff's employment application was not accepted or reviewed for potential employment under a special hiring authority that considers his targeted disability as a positive factor during the evaluation process; instead, Plaintiff's application was disregarded because he lacked experience with "preferred qualifications."  Evaluating Plaintiff as a potential employee with consideration of experience with "preferred qualifications" rather than ascertaining whether he was "otherwise qualified" resulted in Plaintiff being evaluated under the same considerations as applicants without disabilities in violation of Section 501.

**21.**

The Defendant did not achieve compliance with its 12%/2% disability employment goals during the 2016-2018 fiscal years as shown by published data for disability employment rates during each year as follows:

| FISCAL YEAR | IWD | IWTD |
|---|---|---|
| 2016 | 4.95% | **0.44%** |
| 2017 | 5.19% | **1.31%** |
| 2018 | 5.33% | **1.29%** |

{00027565}

**22.**

Noncompliance during the, 2017 fiscal year coincided with the effective date of the more stringent regulations implementing Section 501; Defendant's employment of IWTD represented 1.31% of its workforce triggering the obligation to take specific steps reasonably designed to gradually increase the number of its employees with targeted disabilities during the 2018 fiscal year and thereafter until becoming compliant.

**23.**

The representative percentage of IWTD employed by the Defendant in the 2018 fiscal year declined from the previous year resulting in only 1.29% of its workforce having targeted disabilities. Defendant's failure to comply with its 2% employment goals in fiscal year 2017, and 2018, and the resulting decline in the employment of IWTD resulted from noncompliance with its affirmative action obligations, and lack of commitment to continually act to further increasing the recruitment, employment, promotion, and retention of individuals with targeted disabilities.

**24.**

Plaintiff's efforts to obtain employment included self-identified as an individual with a targeted disability, direct contact with Special Placement Policy Coordinators, ("SPPC"), and the Department's Disability Point of Contact, ("DPOC"), execution of a SF-256, and provided evidence of eligibility for Schedule A employment. Contrary to the testimony from the Department's DPOC, Plaintiff's application wasn't given the consideration it should have received; it wasn't provided to Department hiring managers for Schedule A employment; it wasn't added to a Department database of eligible applicants for future consideration; and the Department has not engaged in "outreach" all of which has deprived Plaintiff and others from the "extra look" opportunity for an interview they should have received.

**25.**

Defendant failed to collect statistical employment data required by 29 C.F.R. § 1614.601 with sufficient accuracy and completeness for identification of employment trends, disparities, or anomalies, ("trigger") that warranted consideration of its employment practices for individuals with disabilities. The Deficient data collection practices prevented the Department from determining the adequacy of its applicant pool of PWD and PWTD for:

    a) internal applicants, or selectees for promotions in mission-critical operations;

    b) meeting goals related to the promotion of employees to senior grade levels; or,

    c) promotions under non-GS pay plans in 2017 and 2018.

**26.**

Defendant also could not adequately evaluate its applicant pool to determine whether it included sufficient candidates with disabilities for compliance with obligations related to:

    a) new hires, at senior grade levels and non-GS pay plans; or,

    b) the promotion of internal applicants to supervisory positions during the 2017 and 2018 fiscal years.

**27.**

The Department's compliance with its affirmative action obligations has been an abject failure. Upon information and belief, it never complied with the 12%/2% disability employment goals when they were aspirational, and they have not complied since they became mandatory. Defendant's Persistent noncompliance with its disability employment goals results from discriminatory and unlawful employment practices in violation of Section 501 of the Rehabilitation Act of 1973, 29 U.S.C.A. §§ 701 et seq,

**28.**

The Defendant's conduct has caused Plaintiff to be unlawfully segregated, and classified, hurt his employment opportunities and excluded him from employment, and related benefits.

{00027565}

**29.**

Plaintiff has incurred damages from Defendant's actions and non-actions which have caused him to suffer from anxiety, humiliation, and embarrassment. The persistent denial of an interview caused Plaintiff to question his self-worth, ability to resume employment, earn a living, and raise and educate his children, entitling Plaintiff to damages for mental anguish and emotional distress, as allowed by law.

**30.**

Plaintiff prays for a trial by jury.

**WHEREFORE**, Plaintiff prays for a judgment from this Court in his favor and against Defendants, William P Barr, and the United States Department of Justice:

(1) Enjoining the United States Department of Justice from further engaging in discriminatory employment practices.

(2) Granting Plaintiff an award of compensatory damages consisting of:

   (a) Back wages and benefits to which Plaintiff would have earned had he not been subjected to discriminatory employment practices by the United States Department of Justice; and,

   (b) Damages for mental anguish, emotional distress according to proof.

(4) Awarding Plaintiff attorney fees and costs of this suit; and

(5) All other relief as deemed appropriate under the premises considered.

Respectfully submitted,

Digitally signed by James L. Maughan
Date: 2020.10.26 18:30:11 -05'00'

James L. Maughan
Pro Se
2390 S. Turnberry Ave.
Zachary, Louisiana 70791
Phone: (225) 713-3666
Facsimile: (833)-556-5436
james@maughan.attorney